IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | **Case No. 17-cr-00661-PWG-1** |
| **v.** | * | |
| | * | |
| | * | |
| **ALDIN FOMUKONG** | * | |
| | * | |
| | * | |
| **Defendant** | * | |
| ************ | | |

## MEMORANDUM OPINION AND ORDER OF COURT

This matter is before the Court on the defendant's Motion for Appropriate Relief (the "Motion") (ECF No. 212), the government's Response in Opposition to Defendant's Motion for Appropriate Relief (the "Opposition") (ECF No. 214), the defendant's Defense Reply to Government's Answer to Defense Motion for Appropriate Relief (the "Reply") (ECF. No. 215), and the defendant's Defense Memorandum in Support of Defense Motion for Appropriate Relief (the "Memorandum") (ECF No. 219). The issues have been fully briefed, and no hearing is necessary. L.R. 105.6, 207. For the reasons stated below, the Motion is **DENIED.**

I.  PROCEDURAL HISTORY

On December 20, 2017, the Court conducted a detention hearing and ordered that the defendant be detained the pending trial. Thereafter, on May 21, 2018, the defendant entered pleas of guilty to Wire Fraud Conspiracy, in violation of 18 U.S.C. § 1349, and Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h). Sentencing is pending. The defendant has been detained since the detention hearing. In his Motion, the defendant requests that he be released pending sentencing.

II. STANDARD OF REVIEW

The release or detention of a defendant pending sentencing is governed by 18 U.S.C § 3143(a), which provides in relevant part:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

18 U.S.C. § 3143(a)(1).

III. DETENTION HEARING

After hearing from the parties at the detention hearing, the Court reviewed the factors set forth in 18 U.S.C. § 3142(g). Based on its review of those factors, the Court found by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community. The Court also found by a preponderance of the evidence that no condition or combination of conditions of release would reasonably assure the defendant's appearance as required. Thus, the Court ordered that the defendant be detained pending trial. *See* Order of Detention (ECF No. 15). The defendant is presently housed at the Chesapeake Detention Facility ("CDF") in Baltimore.

IV. BAIL REFORM ACT

Pretrial detention and release are governed by the Bail Reform Act ("BRA"). 18 U.S.C. §§ 3141 *et seq.* The government is permitted to seek pretrial detention of the defendant in this case because there is a serious risk that the defendant will flee. *Id.* § 3142(f)(2)(A). The BRA requires the Court to order the pretrial release of the person "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will

reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(1)(B). If, however, the Court finds after a detention hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court "shall order the detention of the person before trial." *Id.* § 3142(e)(1). "The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." *Id.* § 3142(f). On the other hand, where risk of flight is the basis of a detention order, the government must prove by a preponderance of the evidence that no combination of conditions of release will reasonably assure the defendant's presence at future court proceedings. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

> The Court's determination is governed by four factors:
>
> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1951, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person, including –
>
> (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

As stated earlier, however, the issue before the Court is not the defendant's pretrial release, but his release pending sentencing after he has been found guilty of an offense. As such, there is a presumption of detention, and the defendant must be detained unless the Court finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released under 18 U.S.C. § 3142(b) or (c). The Court previously found by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community, and by a preponderance of the evidence that no condition or combination of conditions of release would reasonably assure the defendant's appearance as required. *See* Order of Detention Pending Trial (ECF No. 15). The question then is whether any new information has come to light that persuades the Court to modify its prior ruling and now find by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released under 18 U.S.C. § 3142(b) or (c). As such, the defendant's Motion is akin to a motion to reopen a pretrial detention hearing under 18 U.S.C. § 3142(f)(2).

V.  ANALYSIS

The defendant argues that he should be released at this time because he "is at high risk for contracting COVID-19, as he nearly passed away from tuberculosis, in 2010, and has been hospitalized for respiratory illnesses several times since then" and he "is also at high risk for an unfavorable outcome in any infection by coronavirus." Motion (ECF No. 212 at 1). COVID-19 is a worldwide pandemic that has had a profound impact on the health and daily life of millions of people. According to the Centers for Disease Control and Prevention (the "CDC"), as of June 9, 2020, there were 1,956,421 COVID-19-positive cases in the United States and 111,183 deaths

related to the virus.[1]  COVID-19 poses special risks for the elderly and those with certain preexisting medical conditions.  Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19.  *See Coreas v. Bounds*, __ F. Supp. 3d __, Civil Action No. TDC-20-0780, 2020 WL 1663133, at *1-2 (D. Md. Apr. 3, 2020).

At the outset, the Court finds that the unprecedented magnitude of the COVID-19 pandemic and the heightened risk of exposure to residents of detention facilities constitute information not known to the defendant at the time of the detention hearing that has a material bearing on whether conditions of release can be fashioned to assure the appearance of the defendant as required and the safety of the community.  *See, e.g.*, *United States v. Bilbrough*, Criminal Case No. TDC-20-0033, Order at 4 (D. Md. Mar. 20, 2020), *aff'd*, __ F. Supp. 3d __, 2020 WL 1694362 (D. Md. Apr. 7, 2020); *United States v. Martin*, __ F. Supp. 3d __, Criminal Case No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020).  This is particularly true given that the defendant suffers from bronchitis, a health condition that may put him at a higher risk for severe illness from COVID-19.[2]  Therefore, if the Court were reviewing

---

[1] *CDC COVID Data Tracker*, Ctrs. for Disease Control & Prevention (June 9, 2020), https://www.cdc.gov/covid-data-tracker/.

[2] The defendant avers that, because of his history of tuberculosis and respiratory illness, he is at a high risk for contracting COVID-19 and for an unfavorable outcome if he contracts the virus. The defendant has submitted medical records from Prince George's Hospital covering the time period from 2014 to 2015.  Those records reflect a diagnosis of acute pharyngitis in 2014, a diagnosis of an upper respiratory infection in 2015, and a history of bronchitis.  Memorandum Ex. 1 (ECF No. 219-1 at 3, 4, 15, 17). According to the CDC, people suffering from chronic lung diseases, such as chronic obstructive pulmonary disease (including emphysema and chronic bronchitis), idiopathic pulmonary fibrosis, and cystic fibrosis, may put them at higher risk for severe illness from COVID-19.  *See People Who Are at Higher Risk for Severe Illness | Coronavirus | COVID-19 | CDC*, Ctrs. for Disease Control & Prevention (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. The medical records do not describe the defendant's bronchitis as "chronic."

a request for release from pretrial detention, the Court would find that the defendant has established a satisfactory basis to reopen the detention hearing.

Considering that the defendant's basis for reopening the detention hearing concerns new information regarding the impact that COVID-19 may have on his health, the Court finds the following comments by United States District Judge Stephanie A. Gallagher in a recent case particularly instructive:

> Congress carefully prescribed the factors that a court should consider in weighing whether a particular defendant should be detained or released before trial. *See generally* 18 U.S.C. § 3142(g). None of those factors refers specifically to the health of the defendant, or to whether the conditions of incarceration threaten the defendant's well-being. Instead, Congress focused the required inquiry on the defendant's risk of nonappearance, and the danger that the defendant's release would pose to other individuals. In some circumstances, clearly, a particular defendant's medical condition could reduce that defendant's risk of flight or danger to the community, and the health condition would therefore fall within the factors appropriately considered in the context of § 3142(g). Absent those circumstances, however, a particular defendant's health conditions, and the possible risks posed to the defendant by incarceration, do not affect the § 3142(f) and (g) analysis. *See, e.g.*, *United States v. Clark*, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) ("A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community. The risk of harm *to the defendant* does not usually bear on this analysis."); *United States v. Lawton*, Crim. No. CR419-102, 2020 WL 1984897, at *1 (S.D. Ga. April 27, 2020) (same); *United States v. Whyte*, Crim. No. 3:19-cr-64-1 (VLB), 2020 WL 1911187, at *4 (D. Conn. April 8, 2020) (analyzing medical conditions under § 3142(i)); *United States v. Aguirre-Maldonado*, Crim. No. 20-cr-53 (NEB/TNL), 2020 WL 1809180, at *1 (D. Minn. April 9, 2020) ("While the Court appreciates the unprecedented nature of the COVID-19 pandemic, Defendant has offered no reason why the pandemic would reduce his risk of nonappearance or the risk that he poses to the community."); *United States v. Lee*, No. 19-cr-298 (KBJ), 2020 WL 1541049 (D.D.C. March 30, 2020) ("[T]he relevant statutory inquiry [under § 3142(g)] is *not* the benefits that a defendant's release would bring about (however significant) or the harms that his incarceration would cause (however substantial). Rather, the statute requires the Court to evaluate "*the danger*" that "would be posed *by the person's release*.") (emphasis in original).

*United States v. Gallagher*, Criminal No. SAG-19-0479, 2020 WL 2614819, at *3 (D. Md. May 22, 2020) (alteration in original).

Thus, the Court now engages in a *de novo* review of the factors set forth in 18 U.S.C. § 3142(g), including the new information, to determine if it can now find by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety to any other person or the community if release under 18 U.S.C. § 3142(b) or (c).

Regarding the nature and circumstances of the offenses charged, the defendant is not charged with a crime involving violence, a violation of 18 U.S.C. § 1591, a Federal crime of terrorism, a minor victim, a controlled substance, a firearm, an explosive, or a destructive device. *See* 18 U.S.C. § 3142(g)(1). Rather, he has pled guilty to offenses involving wire fraud and money laundering. Each offense carries a maximum period of incarceration of 20 years.

Regarding the weight of the evidence against the defendant, the Court finds that the weight of the evidence against the defendant is strong. The government proffered the following facts at the detention hearing. To summarize, the defendant was a significant participant in an international wire fraud and money-laundering conspiracy. Specifically, the defendant headed the Maryland wing of the conspiracy. The conspiracy involved hacking emails of innocent victims, fraudulently obtaining funds, depositing those fraudulently obtained funds in bank accounts established by fictitious businesses, and then withdrawing those funds for the use of the coconspirators. The government claimed that the conspiracy fraudulently obtained over $8 million, of which more than $7 million remains unrecovered. The defendant recruited members of the conspiracy to register fictitious businesses and open fictitious bank accounts. The defendant also assisted in withdrawing the fraudulently obtained funds, keeping significant amounts for himself and dispersing the rest to his coconspirators, some of whom were located internationally. For example, the defendant transferred $380,000 to his mother's bank account in Cameroon. The government's evidence was obtained during the execution of a search warrant at

the defendant's residence, video surveillance, and a search of his electronic devices. Of note is the fact that, although the defendant was purportedly an unemployed college student residing with his father, the agents seized a 2010 Mercedes 4-door sedan, a 2011 Porsche 4-door sedan, and a 2014 Land Rover, all registered in the name of the defendant, in the course of the investigation. Before executing the search warrant at the defendant's residence, the defendant sold a $105,000 Bentley automobile. The government was able to trace the purchase of these vehicles to fraudulently obtained funds. Based on these proffered facts, the Court concluded that the weight of the evidence against the defendant was strong.[3]

Regarding the history and characteristics of the defendant, the Court reviewed the Pretrial Services report that summarized the defendant's residential history and family ties, his employment history and financial resources, his health, and his criminal history. The defendant was born in 1993 and is single. At the time of the detention hearing, he was residing with his father, was unemployed (last employed in 2015), was attending classes at Prince George's Community College, and was financially supported by his father. His mother resides in Cameroon, and, according to the government, he has sent funds to her in Cameroon. He possesses a United States passport but was unaware of its whereabouts. Although the whereabouts of his passport is unknown, the defendant has engaged in significant foreign travel since he arrived in the United States in 2011, particularly within the year before the detention hearing, when the government reported that he traveled internationally to Dubai, Tanzania, Montego Bay, Johannesburg, Barbados, and Cancun. The defendant advised the report writer

---

[3] The government proffers additional incriminating facts in the Opposition (ECF No. 214 at 4-6). Further, at the plea hearing on May 21, 2018, the Court considered the detailed statement of facts to which the defendant stipulated.

that he was in excellent physical health with no medical problems.  He has no criminal history. *See id.* § 3142(g)(3).

Regarding his physical condition, the medical records confirm a history of bronchitis, a condition that may subject him to severe illness if he contracts COVID-19.  However, this is not a case where the risk of flight or danger to the community is reduced because of his history of bronchitis or because of advanced age, physical disability, or serious incapacitating illness.  The defendant's particular health conditions have no bearing on risk of flight or danger to the community.  Simply stated, the defendant's preexisting health conditions, and the possible risks posed to the defendant by incarceration, do not affect the § 3142(f) and (g) analysis.  As will be discussed below, however, the defendant's preexisting health conditions are relevant in assessing whether the defendant should be released temporarily under 18 U.S.C. § 3142(i).

Finally, regarding the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release, the Court finds that the defendant would pose a financial danger to the community if released, based on the nature of the offenses and the weight of the evidence against him.  *See id.* § 3142(g)(4).

After reviewing *de novo* the § 3142(g) factors, including the new information regarding the defendant's health, the Court does not find by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released under 18 U.S.C. § 3142(b) or (c).  The defendant suggests that he be released on bail or home detention.  Traditional home detention with location monitoring requires a probation officer to install a transmitter to the defendant's ankle.  That practice, however, does not permit the probation officer to maintain an appropriate social distance, thereby potentially placing the probation officer and the defendant at a higher risk of transmitting

the COVID-19 virus. As such, the United States Probation Office has suspended this traditional location monitoring and instead now employs other location monitoring techniques, including SmartLink, VoiceID, and Home Incarceration by Phone. These alternative technologies would not be adequate in this case. They would not monitor the defendant's location in real time. Rather, they would determine the defendant's location on a periodic basis throughout the day. With traditional home detention with location monitoring, the monitoring agency would receive an alert the moment a defendant leaves the residence or tampers with the transmitter. The alternative technologies now in use do not offer that high level of protection. The defendant could come and go without the knowledge of his probation officer, depending on the timing and frequency of the location checks. Further, the SmartLink technology, which involves the use of a smartphone, would require the defendant to have an internet-accessible device, which would be prohibited, given the government's assertion that the fraud scheme was facilitated through the use of computers, cell phones, and access to the internet. Therefore, the defendant could continue to engage in acts in furtherance of the conspiracy even if he was released on home detention.

Risk of flight is also a serious concern to the Court, given the absence of any credible explanation of the whereabouts of the defendant's passport, although he traveled internationally as recently as July 2017, five months before his arrest. Further, the defendant had, and may still have, access to significant funds, as evidenced by the significant assets he acquired, all while he was an unemployed student supported by his father. Finally, as the government advises, significant proceeds from the conspiracy remain unaccounted for.

VI. TEMPORARY RELEASE UNDER § 3142(i)

The Court also considers whether temporary release under 18 U.S.C. § 3142(i) is appropriate. Under 18 U.S.C. § 3142(i), the Court "may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."[4]

To determine whether the defendant has established "another compelling reason" for temporary release in the midst of the COVID-19 pandemic, the Fourth Circuit has directed the Court to

> consider in the first instance the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a "compelling reason" for temporary release under 18 U.S.C. § 3142(i).

*United States v. Creek*, No. 20-4251, Order at 1 (4th Cir. Apr. 15, 2020).

In the context of COVID-19, four factors are to be considered in determining whether a compelling reason permitting temporary release under 18 U.S.C. § 3142(i) has been established: (1) the original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that a defendant's release would increase the COVID-19 risks to others. *United States v. Green*, No. 1:19-cr-00539-CCB-1, 2020 WL 1873967, at *3 (D. Md. Apr. 15, 2020) (citing *Clark*, 2020 WL 1446895, at *3). The defendant has the burden to show that circumstances warranting temporary release under § 3142(i) exist. *United States v. Sanders*, __ F. Supp. 3d __, No. 19-20037-01-DDC, 2020 WL

---

[4] The defendant has not argued that release, temporary or otherwise, is necessary for the preparation of his defense.

1528621, at *3 (D. Kan. Mar. 31, 2020). "The question for the Court is whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those traditional Section 3142(g) factors *and* the COVID-19 health risk to the community that Defendant's release could occasion." *United States v. Hernandez*, No. PX-19-158-9, slip op. at 5-6 (D. Md. Apr. 29, 2020).

As discussed above, the original grounds for detention weigh heavily in favor of the government. The defendant poses a serious risk of flight and financial danger to the community, even if released on home detention with location monitoring. Regarding the specificity of the defendant's COVID-19 concerns, the defendant's history of bronchitis may make him especially vulnerable to contracting COVID-19 and may heighten his risk of severe illness if infected with COVID-19. Although the medical records submitted by the defendant confirm this condition, they do not reflect that he is not being properly treated for it.[5] In regard specifically to COVID-19, although the defendant may be at a higher risk of severe illness if he contracts COVID-19, he has not contracted the virus thus far, he has not been exposed to anyone who has contracted the virus, he has not exhibited symptoms consistent with COVID-19, and he does not aver with any specificity that his individual placement conditions heighten the possibility that he will be exposed to the virus. The defendant has not established that the risk that the COVID-19 virus poses to him is greater than the risk faced by all other detainees at CDF. Likewise, the defendant has not established that the precautionary measures implemented at CDF are not adequate to protect him and other detainees from exposure to the virus. Finally, regarding the final two *Clark* factors, the defendant has not proposed a release plan beyond requesting release on bail or home detention.

---

[5] The defendant has not submitted any medical records from CDF.

For these reasons, when balanced against the § 3142(g) factors, the Court does not find that the risk that the COVID-19 virus poses to the defendant, given his existing medical condition and the current COVID-19 situation at CDF, rises to the level of a "compelling reason" for temporary release under 18 U.S.C. § 3142(i).

## **ORDER**

Accordingly, it is this 10th day of June 2020, hereby **ORDERED** that the defendant's Motion for Appropriate Relief (ECF No. 212) is **DENIED**.

Date: June 10, 2020                                      /s/
                                                                Thomas M. DiGirolamo
                                                                United States Magistrate Judge